UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No. 24-CR-331 (RJL) |
| | : | |
| v. | : | |
| | : | |
| **KENTRELL FLOWERS,** | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. This memorandum, together with such evidence as may be presented at the sentencing hearing and the Government's allocution at the time of sentencing, is intended to outline to the Court relevant matters relating to what the government believes would be an appropriate sentence in this case. Because of this conviction, the government has reviewed the application of the advisory Sentencing Guidelines, the final Presentence Report ("PSR") prepared by U.S. Probation Officer ("USPO") Ms. Haley E. Spicer, *see* ECF #28, the relevant factors set forth in 18 U.S.C. § 3553(a), and the defendant's plea for any impact on the appropriate sentence for the defendant in this matter. The government submits that an appropriate sentence for defendant Flowers would be an upward variance sentence from the applicable Sentencing Guidelines range to a sentence of incarceration of 120 months, followed by five years of Supervised Release.

1

**I. INTRODUCTION**

On February 20, 2025, the defendant pled guilty to Count 2 of the Indictment charging Using, Carrying, Possessing, and Brandishing a Firearm During a Crime of Violence, in violation of 18 USC § 924(c)(1)(A)(ii). Pursuant to the written plea agreement, the defendant acknowledged a violation of 18 USC § 924(c)(1)(A)(ii) carries a mandatory minimum sentence of seven years of imprisonment, and a maximum sentence of Life imprisonment; a fine of $250,000; a term of supervised release of not more than five years; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made. The defendant also agreed to pay a special assessment of $100.

**II. FACTUAL BACKGROUND**

On July 5, 2024, at approximately 1:17 AM, Deputy United States Marshal ("DUSM")-1 and DUSM-2 were on-duty, working a protective detail on the 2100 block of 11th Street, Northwest, Washington, D.C. Both DUSMs were dressed in U.S. Marshals apparel while on duty. DUSM-1 wore a U.S. Marshals Service Polo shirt while DUSM-2 wore a U.S. Marshals Service T-Shirt. The DUSMs were parked in separate vehicles about 1:15 a.m. in the 2100 block of 11th Street NW, when a silver mini-van stopped directly next to DUSM-1's vehicle while he was seated inside his unmarked U.S. government vehicle. As the silver mini-van stopped, an individual, later identified as defendant Kentrell Flowers ("FLOWERS"), got out of the van, approached DUSM-1's driver's side-door, and pointed a firearm directly at DUSM-1 through the front driver's side window.

DUSM-1, while seated in his government vehicle, then pulled out his department issued firearm and fired approximately four times at FLOWERS through the driver's side window,

2

striking FLOWERS in the mouth. *See* Figures 1 & 2 below (images of vehicle).



*Figure 1 – Damage to driver's side window after DUSM-1 fired at FLOWERS*



*Figure 2 – Damage to driver's side window after DUSM-1 fired at FLOWERS*

DUSM-2 also fired numerous shots at FLOWERS. Seconds later, FLOWERS fell to the ground near the driver's side of DUSM-1's vehicle. DUSM-1 then exited his vehicle and provided first aid to FLOWERS, while the silver mini-van driven by unknown suspect S-2 fled the scene travelling northbound on 11th Street Northwest. A second unknown suspect, S-3, fled the scene on foot after getting out of the vehicle from which the defendant initially exited. The firearm FLOWERS possessed was subsequently recovered nearby. DUSM-1 picked up the firearm that FLOWERS pointed at him and placed it into his right pant leg pocket to secure the firearm. The recovered firearm, which was later processed on the scene by an MPD crime scene technician, was determined to be a .40 caliber Smith & Wesson (SN# SW40VE). It had (0) rounds in the chamber, and (8) rounds of .40 caliber ammunition in a 13-round-capacity magazine. *See* Figure-3 below.



*Figure 3 – .40 caliber Smith & Wesson and loaded magazine*

Moreover, to further treat the defendant's injuries, FLOWERS was transported to a local hospital where he was treated for injuries to his mouth and placed under arrest. While at the hospital, FLOWERS verbally identified himself, giving his name, date of birth, and address.

While investigating the attempted carjacking, an MPD detective recovered video from near the location of the scene that captured portions of the incident. The video, which is in black and white, showed that at approximately 1:17 AM, a light-colored mini-van drove Northbound on the 2100 block of 11th Street, Northwest and then stopped next to DUSM-1's car. An individual later identified as FLOWERS then got out of the van and approached DUSM-1's driver's side door. Within seconds, the light-colored van started driving Northbound on 11th Street, with the rear right passenger door opened. Simultaneously, another subject (believed to be S-3) started running northbound from the rear of the van, onto the sidewalk. The van then continued driving northbound as the subject continued running northbound on the sidewalk. The van and S-3 then went out of the view of the camera. *See* Figure 4 below.



*Figure 4 – Red arrows above points to S-2 driving away and S-3 running from the vehicle that FLOWERS initially exited prior to approaching DUSM-1*

## III. SENTENCING CALCULATION

### A. Statutory Maximum

Count Two: The statutory minimum sentence of seven years imprisonment and a maximum sentence of life imprisonment; a fine of $250,000, and a term of supervised release of not more than five years. *See* PSR ECF #28 ¶¶ 4, 6, and 65-66.

### B. Sentencing Guideline Calculation

The government has reviewed the PSR prepared by USPO Ms. Spicer outlined in, *id*. ¶¶ 65-66 as follows: **Statutory Provisions:** The minimum term of imprisonment is seven years, and the maximum term is Life for this Class A Felony. 18 USC § 924(c)(1)(A)(ii).

**Guideline Provisions:** The guideline sentence is the term of imprisonment required by statute, which is seven years USSG §2K2.4(b).

**C. Sentencing Factors**

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing defendant Flowers.

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant**.

**(A) The nature and circumstances of the offense**

Here, the nature and circumstances of the offense counsel in favor of an upward variance sentence to a sentence of incarceration of 120 months. As outlined above, the defendant while armed with a loaded firearm, and with the assistance of unidentified co-conspirators, attempted to carjack a person unbeknownst to him was DUSM-1 sitting in his vehicle on protective duty status - which put DUSM-1 in fear of death or serious bodily injury. Simply put, the defendant's actions were chilling and most disturbing and a total disregard for DUSM-1 or this community. In fact, the factors listed in 18 U.S.C. § 3553(a) strongly suggest that this Court should vary upward from the Guidelines based on the egregious nature of the defendant's criminal conduct. Indeed, because of the violent nature of the defendant's criminal offense, and the sheer terror the defendant instilled in the DUSMs-1 and 2, the government believes that an upward variance sentence to 120 months sentence of incarceration is appropriate and sufficient, serves the interests of justice, and would punish the defendant appropriately.

More broadly, it cannot be overstated that the defendant actions and loaded firearm possession present a serious danger to the community. District Court cases in this district have highlighted this dangerousness. "[I]llegally possessing a fully loaded concealed firearm with easy, quick access in the

7

front waistband of defendant's pants, while out in public, poses an inherent risk of danger to the community." *United States v. Blackson*, Crim. Case No. 23-CR-25, 2023 U.S. Dist. LEXIS 18988, at *20 (D.D.C. Feb. 6, 2023). "[U]nlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public." *United States v. Gassaway,* Crim. Case No. 1:21-CR-550, 2021 U.S. Dist. LEXIS 175978, at *8 (D.D.C. Sep. 16, 2021); *see also United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) ("[C]arrying a loaded firearm—especially if the carrier has a violent history . . . has the great potential to escalate into violence."); *United States v. Biggs*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[P]ossession of a firearm . . . presents a serious danger to the community.").

The defendant possession of a loaded firearm in the instant offense is significant. As this Court is acutely aware that a firearm has the capacity to cause meaningful bodily injury—including death—such that their illegal possession poses an intolerable likelihood of harm. *See United States v. Kent*, Crim. Case No. 20-cr-209, 2020 WL 7353049, at *5 (D.D.C. 2020) ("Firearms present a risk of danger from either intentional or unintentional discharge; each risk has the potential to cause injury or death to members of the community."). Most concerningly, the defendant had a firearm that was capable of causing immense amounts of harm, death, and destruction. Even more concerningly, together the defendant's criminal violent actions and a loaded firearm possession in the community and criminal actions against DUSM-1 in this case demonstrate the need for the government's recommended sentence.

### (B) The history and characteristics of the defendant

Significantly, the government avers that in reviewing the PSR prepared by USPO Officer Ms. Spicer, she found that the defendant is a 19-year-old man who had no prior adjudications or convictions. *See* PSR ECF#28 ¶¶ 34 & 49-54. Notably, the government is particularly concerned about this defendant and his violent assault on DUSM-1 in our community. The government has

8

also reviewed the defendant's Personal and Family Data as outlined in the PSR which outlined the defendant's relationship with his mother and his other family members. *See* PSR ECF #28 ¶¶32-41. In addition, the government has reviewed the defendant's Mental and Emotional Health and Substance Abuse backgrounds as outlined in his PSR. *See Id.* ¶¶47-49.

> **(2)** **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence; to protect the public from further crimes of the defendant; and to provide defendant with appropriate education or vocational training.**

In determining the proper sentence, a sentencing court has discretion to consider the reliability with which relevant facts where established, and to consider how closely related such relevant conduct is to the offense of conviction. *Cf. United States v. Cordoba-Murgas*, 233 F.3d 704, 709 (2d Cir. 2000). Accordingly, the government strongly argues that based on the facts of this matter and the defendant's plea dictates that an appropriate sentence for defendant Flowers would be an upward variance sentence of the applicable Sentencing Guideline for a sentence of incarceration of 120 months. Such a sentence will promote respect for the law, provide just punishment, and, most importantly, deter others who otherwise might engage in similar conduct. All of these important sentencing objectives would be supported by the government's requested sentence.

> **(3) The sentencing range established by the United States Sentencing Guidelines**

The Supreme Court has declared that, in terms of determining an appropriate sentence, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 U.S. 586, 596 (2007). Here, the government believes that an upward variance sentence of the applicable Sentencing Guideline

for a sentence of incarceration of 120 months is the appropriate sentence in this case, as outlined *supra*.

**(4) Any pertinent policy statement issued by the USSC**

The government is unaware of any pertinent policy statements issued by the U.S.S.C.

**(5) The need to avoid unwarranted sentencing disparities among defendants with similar records**

Undersigned counsel for the government respectfully avers and opposes a sentence of only applying the mandatory minimum term of 84 months in this case. The government strongly avers that its recommended sentence to this Court will promote respect for the law and provide just deterrence. For example, declining an upward variance based on the need to avoid unwanted sentencing disparities would be respectfully misplaced and fundamentally wrong, due to the severe nature of the defendant's criminal conduct which put the DUSM-1 in significant fear of death or serious bodily harm. The goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

As discussed above, the defendant should be sentenced to an upward variance sentence of

the applicable Sentencing Guideline for a sentence of incarceration of 120 months, which is an appropriate sentence in this case. Consequently, based on the facts and evidence in this matter there would be no disparities among other defendants with similar records. The government's requested sentence is supported by the fact that the defendant shows no remorse for his criminal acts where others were placed in fear of death. The defendant's brazen criminal actions, with other unidentified co-conspirators, weigh strongly in favor of an upward variance sentence in this case. Here, this Court should sentence the defendant accordingly.

### III. CONCLUSION

For the foregoing reasons, the Government respectfully requests that this Court impose an upward variance sentence of the applicable Sentencing Guideline for a sentence of incarceration of 120 months, followed by five years of Supervised Release. The government respectfully avers that its recommended sentence to the Court would therefore reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. Most importantly, this sentence would afford adequate deterrence and protect the public from further crimes of the defendant.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:    /s/Emory V. Cole
       Emory V. Cole
       PA. Bar #49136
       Assistant United States Attorney
       United States Attorney's Office for D.C.
       601 D Street, N.W.
       Washington, D.C. 20530
       E-mail: Emory.Cole@usdoj.gov
       Telephone: (202) 252-7692